RUFUS MAYHEW *v.* THE COMMISSIONERS OF HAMILTON COUNTY.

1. It is the duty of the county commissioners, in the first instance, to employ suitable persons to clean and keep in order the court-rooms, and to perform other acts of like necessity for the comfortable and convenient transaction of public business in the courts, and this duty includes such provision for the probate court.

2. Should the commissioners refuse, or neglect, upon proper request, to make these provisions, it would devolve upon the courts, as a matter of necessity, to have them made until the commissioners could be required, by *mandamus*, to do so; and in such cases, the commissioners would be liable for the compensation of persons so employed.

SPECIAL TERM.—Action to recover for services as janitor of the rooms of the probate court.

The facts of appointment and service appear in the decision.

*W. B. Probasco,* for plaintiff.

*Groesbeck & Thompson,* for defendants.

SPENCER, J. This is an action brought by the plaintiff to recover a compensation for services rendered by him as an employee in the office of the probate judge of Hamilton county—said services consisting in the making of fires, cleaning out and keeping in order the court-room, and performing other acts of like necessity, for the comfort and convenience of the probate court. It appears in evidence,

that, on the 5th day of May, 1855, the judge of the probate court made an order, directing the sheriff of the county to procure a suitable person to perform such services, and thereupon the sheriff, with the consent and approval of the judge, and assuming to act on behalf of the county, employed the plaintiff for that purpose, who entered upon the performance of the labors for which he was engaged, on the 7th day of May, and continued in such employment, with the knowledge of the defendants, from that time until the 20th day of October following, receiving pay weekly, out of the county treasury, with the consent of the defendants, and upon the orders of the county auditor. On the 17th of October, 1855, the board of commissioners, then in session adopted the following resolution, viz: ·

" *Resolved*, That we do not acknowledge the right of any person or persons to make any appointment of messenger or sergeant-at-arms, in or about the court-house; and no such messenger or sergeant-at-arms will be paid for his or their services out of the county treasury."

Notice of this resolution was communicated to the plaintiff, who, nevertheless, continued to perform the services aforesaid, under the said appointment, from that time until the bringing of the present action, a period of ninety-two days, or fifteen weeks and two days, for which services the commissioners refuse to make him any compensation; nor have they, during said period, made, or offered to make, any other provision for the performance of such service. It appears, from the evidence, that the business of the office is very extensive, and the services performed by plaintiff highly essential to the cleanliness and convenience of the court-room and office, and the comfort of all persons having business therein, and that the sum charged by, and heretofore paid and allowed to, the plaintiff, is a reasonable compensation for their performance. On the part of the defendants it was proved that, prior to the appointment of the plaintiff, the defendants had employed one Belknap, to perform the same services for the probate court; but the judge of probate refused to permit him to perform

the same, alleging that he was a stranger wholly unknown to him, and he did not know whether he was trustworthy, and he was not bound to inquire. This appointment of Belknap was revoked by the defendants on the 28th day of July, 1855, by the following resolution:

"*Resolved*, That the resolution of April 28, 1855, appointing H. P. Belknap as sergeant-at-arms in the probate court, is hereby rescinded, as the resolution was illegal and unauthorized by law, as we believe."

It is conceded, on the part of the defendants, that the services performed by the plaintiff are essential to the cleanliness, comfort, and convenience of the court-room, and the proper conducting of the business in the probate court. But it is denied that the defendants, as representatives of the county, are, in anywise liable therefor, on either one of two grounds:

1. That it is not, in anywise, the duty of the county to provide for the performance of such services, and make compensation therefor; but the same should be provided for, either by the sheriff of the county or by the judge of probate himself.

2. That if it be required of the county to make such provision, then it devolves upon the defendants, as representatives of the county, and not upon the sheriff or probate judge, to see that the provision is made; and, forasmuch as the defendants appointed a suitable person to perform the service, whom the judge of probate refused to receive, the county is not responsible for services performed by another, without the consent of the defendants.

I. Upon the first of these objections, we remark that it is the duty of the public to make suitable provisions for the administration of justice. This includes not merely the organization of courts, but the providing of court-rooms, with all the appendages, furniture, and appointments whatsoever, necessary to render them comfortable to the courts and commodious to the public. These, under our system, with the exception of judges' salaries, are uniformly chargeable

upon the county treasury, when other provision is not made; each county being, for this and other purposes of public concern, a political organization represented by the county commissioners. Section one of the act providing for the erection of public buildings, authorizes and empowers the commissioners to build and furnish suitable court-houses, etc., and to provide therein rooms for clerks of courts, sheriffs, and other county officers. Section three of the same act requires the commissioners to furnish and keep them in repair. These words are not used in a restricted sense, but in a general and enlarged one, embracing all that is necessary and proper to make, and to keep them in a condition, commodious and comfortable for the transaction of the public business, and including all the labor requisite for that purpose. This opinion is fully warranted by the decision of the Supreme Court, in the case in 11 Ohio, 368, *Commissioners of Trumbull county* v. *Hutchins;* where the court say : " It is the legal duty of the county commissioners to furnish all things coupled with the administration of justice, within the limits of their own county." It is supposed that the probate court does not stand upon the footing of other courts, in this respect; the office of the probate judge being ministerial, to a certain extent, as well as judicial. Although this be true, the conclusion, drawn from it, by no means follows. The probate court has, in every respect, the most important judicial function to perform, requiring a convenient court-room, for the accommodation of the public; and for which, by section thirteen of the act establishing such courts, provision is required to be made by the county commissioners, at the expense of the county. It has jurisdiction not only of the probate of wills, and settlement of administrators' and guardians' accounts; of actions for the sale of real estate by administrators and guardians, and for the completion of contracts made by deceased persons; but it has jurisdiction in matters of *habeas corpus ;* to make inquests respecting lunatics; to make inquests of the compensation to be made to the owner of private property, appropriated to public use; to try contests of the election of justices of the

peace, and it has jurisdiction of public offenses not punishable by imprisonment in the penitentiary, or by justices of the peace, for which juries must be summoned and provision made for their accommodation.   In the exercise of this extensive jurisdiction, the probate court must, necessarily, become a place of great public resort, and require the same conveniences and accommodations as are required by the other courts of the county.

There is no provision of law which calls upon the sheriff, or upon the judge of probate, to furnish, at his individual expense, either the labor or the materials requisite for keeping the court-room of the probate judge in a condition convenient to himself and to others.   On the contrary, the services thus required, being of public necessity, must be paid for by the public, which, for those purposes, as before observed, is represented by the county in the persons of its commissioners.

It has been supposed that section three of the act in relation to sheriff's fees, was intended to meet a case of this description.   It reads as follows: "The court of common pleas shall make allowance, not exceeding $100 per year, for the sheriff, for services where the State fails, or the defendants prove insolvent, and for other services not particularly provided for."   Although this section of the law might possibly be so applied, as, in many cases, to compensate for services such as those which are the subject of the present action, yet it is clear to my mind that it was not intended as the sole means of making such compensation, but to apply to those official acts of the sheriff, which it was his duty, and his alone, to perform.   The charge and custody of the court-house is not confided to the sheriff alone; he is required to act under the direction and control of the commissioners, as will be seen hereafter, and it could not have been intended to subject him to the entire expense of taking such charge, and, at the same time, put him under the control of others.

II. The second objection made by the defendants to a recovery is, that prior to the time of performing any service

by the plaintiff, the defendants had made suitable provision for the performance of the same service by the appointment of Belknap for that purpose, whom the probate judge refused to permit or allow to discharge the same, without sufficient cause, assuming to himself the right to select his own agents, and thereby discharging the county from all responsibility in the matter.

This objection is answered by the facts of the case. If it be true that the sole right or duty of making such provision is devolved, by law, upon the county commissioners, yet in the present case, although they had made such provision, and the same was refused, they did, in fact, accept the services of the plaintiff, and, for a period of nearly six months, caused the same to be paid for out of the county treasury. Meanwhile, they repealed the resolution appointing another, declaring that it was unlawful, and refused, subsequently, to make other provision. In this state of the case, it was an act of public necessity that the service should be performed by some one; whether under the direction of the sheriff, to whom the custody and charge of the court-house is confided, or of the probate judge, does not seem to me material, since, in either case, the law raises an implied promise to pay for it as much as it is reasonably worth. This rule was applied in 5 Ohio, 23, *Trustees of Cincinnati Township* v. *Aaron Ogden.* That was an action brought against the township for supplies furnished by a private individual to a pauper, who was a township charge, the overseers of the poor having refused to provide them. The court held that, although it was discretionary with the trustees to make or refuse an order for the support of a pauper, yet it was a discretion which must be so exercised as to carry into effect the object of the law; and when they refused to perform the duty, another might do it for them, and have his remedy by action against the township.

This view of the matter, in my judgment, disposes of the case; but a desire was uttered on the trial to have an expression of opinion upon the question as to whose duty, or

right, it was to provide for the performance of services like those performed in the present case. There is no provision of law which authorizes the judges of the respective courts, in the first instance, to interfere in the business of providing court-room furniture, or any of the appointments necessary to the convenient administration of justice—these are all expressly devolved upon the county commissioners, by the enactments already quoted. Should the commissioners refuse, or neglect, upon proper request, to make these provisions, it would devolve upon the court, as a matter of necessity, to have them made until the commissioners could be required by *mandamus* to do so.

But, as the right in such cases is derived from necessity, it would only be co-extensive with such necessity, and would cease whenever the necessity was at an end. Aside from the express provisions of the law above quoted, the county commissioners are the general executive officers of the county, empowered to levy taxes for the necessary wants and exigencies of the county, to whom the protection of the interests of the county are, in a general point of view, confided; all questions or matters involving an expenditure of money on the part of the county, necessarily devolve upon them, unless specially referred by law to other persons. There is but one provision of law which seems to impose upon another the duty of providing for services such as those which are the subject of the present suit, and that is section six of the act providing for the erection of the public buildings. It is in these words: "The sheriff shall have charge of the court-house, under the direction and control of the commissioners." Whatever is necessary to be performed by the sheriff, in the taking of such charge, so as to have the courts open when required by law, and in a convenient manner, may, doubtless, be performed under his direction; and, as an incident to such charge, would be the keeping of the rooms cleanly and comfortable, and the employment of laborers for that purpose. Upon the sheriff, therefore, in the first instance,

would seem to devolve the duty of procuring suitable labor-
ers. But in this he is made subservient to the "direction
and control of the commissioners," and can not act contrary
to their wishes, unless they refuse altogether to act in the
matter. Any other view of the subject would take the
matter wholly from the control of the commissioners, and
enable others (it might be) to make improvident contracts
for the county.

On the other hand, it has been claimed that the county
commissioners are not empowered to interfere, and espe-
cially with the probate court, without consulting the wishes
of the respective courts. A proper degree of courtesy
should, doubtless, be observed by the commissioners, in not
appointing persons for the performance of these services
who are obnoxious to, or have not the confidence of, the
judges of the court, as where the individual appointed was
incompetent, or not trustworthy; but to render such an ap-
pointment a matter of legal complaint, it must be of such a
character as to wholly fail of the object intended, in which
case it would be the duty of the court to cause the
obnoxious person to be removed. Now, is there anything
in the situation of the probate court which creates an excep-
tion to the general rule? It is true that valuable papers are
committed to the care of the probate judge, and that bond is
given by him for the faithful performance of his duties. But
his responsibilities are not increased by the employment of
servants not under his control, and the circumstance of valua-
ble papers being, more or less, exposed to accident, or loss,
by the employment of unworthy persons about the office,
only imposes upon the commissioners greater care and vigi-
lance in the selection of suitable servants to perform the
necessary services required, while, at the same time, it does
not release or take from them the duty of making such pro-
vision.

Upon the whole case, judgment will be entered for the
plaintiff for the amount claimed in his etition, with costs.